IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ELBA POPPITI, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No.:  4:19-cv-02028-SNLJ |
| | ) | |
| UNITED INDUSTRIES CORP. and SPECTRUM BRANDS, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

As set forth below, Plaintiffs' Opposition ("Opp.") fails to overcome Defendants' showing of multiple and incurable deficiencies in the Amended Complaint.[1]

## I.   PLAINTIFFS CONCEDE THEY LACK STANDING TO PURSUE INJUNCTIVE RELIEF

In their Motion, Defendants established that Plaintiffs lack standing to pursue injunctive relief.  *See* Dkt. # 23 ("Mot.") at 9-10.  Plaintiffs concede it:  "Plaintiffs will not pursue claims for injunctive relief."  Opp. at 2, n.1.  All allegations seeking injunctive relief should thus be stricken from the Amended Complaint.  *See* FAC ¶¶ 37, 44, 62(g).

## II.   ALL CLAIMS AGAINST SPECTRUM SHOULD BE DISMISSED

Defendants painstakingly established in their Motion that this Court lacks personal jurisdiction over non-resident Spectrum, including because Plaintiffs failed to allege **any** nexus between Missouri and the specific claims against Spectrum.  Mot. at 5-6, 10-12.

---

[1] Unless otherwise stated, all definitions herein are the same as in Defendants' moving papers.

In their Opposition (at 23), Plaintiffs utterly failed to rebut Defendants' detailed showing, let alone meet Plaintiffs' burden to establish jurisdiction over Spectrum:  "To survive a [Rule 12(b)(2)] motion to dismiss, the ***plaintiff must*** state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction ***in the forum state***."  *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (emphasis added).  Plaintiffs do not identify a single allegation that could subject Spectrum to jurisdiction in Missouri.  This is dispositive—Spectrum should be dismissed from this action.  *See Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017) (*BMS*) (exercise of personal jurisdiction is unconstitutional when there is no "connection between the forum and the specific claims at issue" against a nonresident defendant) and Mot. at 5-6, 10-12 (citing multiple U.S. Supreme Court, Eighth Circuit, and Missouri District Court decisions).[2]

## III.    PLANTIFFS FAIL TO ALLEGE AN INJURY-IN-FACT

Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves [by incurring costs] based on their fears of hypothetical future harm…."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).  Rather, "standing must be particularized,

---

[2] Plaintiffs did not challenge any of the authority Defendants cited which established lack of personal jurisdiction over Spectrum.  In their Opposition (at 23), Plaintiffs cited three inapposite cases, which neither addressed the issue of personal jurisdiction, nor even used the word "jurisdiction."  Plaintiffs, in citing these cases, seem to confuse the issue of personal jurisdiction with unrelated concepts of potential corporate liability of affiliated companies and *alter ego*: *United States ex rel. Scharber v. Golden Gate Nat'l Senior Care LLC*, 135 F. Supp. 3d 944, 967 (D. Minn 2015) (discussing corporate parent liability; no discussion of personal jurisdiction); *Reg'l Multiple Listing Serv. of Minnesota, Inc. v. Am. Home Realty Network, Inc.*, 9 F. Supp. 3d 1032, 1044 (D. Minn. 2014) (same); *Collet v. American Nat'l Stores, Inc.*, 708 S.W.2d 273, 283-83 (Mo. App. 1986) (addressing *alter ego*; no discussion of personal jurisdiction).  Thus, Spectrum should be dismissed from this action.

meaning the alleged 'injury must affect the plaintiff in a ***personal and individual way***.'" *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)) (emphasis in original).

Defendants made their Motion because, *inter alia*, Plaintiffs have not pled Article III standing. *See* Mot. at 6-8. Defendants' Motion is well-founded. In the original complaint (Dkt. # 1), Plaintiff utterly failed to plead any injury-in-fact because the original complaint did not allege that the candle Plaintiff bought was "ineffective" to "repel[] mosquitos" because she failed to allege anything about what she personally did with the candle after she bought it. *Id.* and Dkt. # 13 at 5-7.

Plaintiffs conceded this pleading deficiency inasmuch as they filed the Amended Complaint, alleging that they "used the Product according to its directions and [were] bitten by mosquitoes. The Product was ineffective to repel mosquitoes." FAC ¶¶ 17-18. However, these scant and conclusory allegations are still not sufficient under Eighth Circuit law: "Without any particularized reason to think the consumers' own [products] actually exhibited the alleged … defect, the consumers lack Article III standing to sue." *Wallace*, 747 F.3d at 1030. Most critically, Plaintiffs fail to allege (a) whether any mosquitos bit them ***while*** the candle was burning as intended, (b) if any did, the details of how it happened, and (c) whether or what each Plaintiff knew about any of the "studies," "statements," etc. that purportedly described the Products/citronella as "ineffective." *See* FAC. These missing allegations bear directly on Plaintiffs' standing. *See* Mot. at 6-8.

In their Opposition (at 3-6), Plaintiffs argue that, in the Amended Complaint, they alleged "enough" to establish standing. Plaintiffs' arguments do not withstand scrutiny.

3

First, Plaintiffs proclaim that "Nothing more [than they already plead] is required," relying on four cases.  Opp. at 3-4.  None help Plaintiffs.  *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011) (*Zurn Pex*), addressed standing on a motion for class certification, in the context of "Minnesota warranty law," and noted that, "plaintiffs had alleged that their [products] exhibited a defect."  *Id*. at 616-17.  Even assuming *Zurn Pex* is applicable here, it supports Defendants.  Plaintiffs, by apparently refusing to plead that they, among other things, were allegedly bitten by mosquitos ***while*** the candle was burning as intended (if that is what allegedly happened, as opposed to Plaintiffs being bitten when, for example, they weren't even near the candle), in effect are refusing to allege that the candles they allegedly bought "exhibited a defect."  Thus, the Amended Complaint is deficient even under *Zurn Pex*.[3]  As well, *In re Polaris Mktg., Sales Practices, & Prod. Liab. Litig.*, 364 F. Supp. 3d 976 (D. Minn. 2019) (*Polaris Mktg.*), supports Defendants because it found "that eight of the eleven Plaintiffs—those who do ***not*** allege that [their products exhibited the alleged defect]—lack standing under Article III of the United States Constitution."  *Id*. at 982-83 (emphasis in original).

Second, Plaintiffs argue that requiring them to plead, among other things, that they allegedly were bitten by mosquitos ***while*** the candle was burning as intended is "far beyond what is required" by Rule 8(a)(2).  *See* Opp. at 4.  Plaintiffs are wrong.  They rely

---

[3] Based on Plaintiffs' description of *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) (*see* Opp. at 3-4), it is to the same effect as *Zurn Pex*.  In turn, *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d at 1111 (N.D. Cal. 2010), is inapposite.  At issue there were granola bars, alleged to have been manufactured with dangerous amounts of trans fat, but were labeled and marketed as wholesome and healthful.  *Id*. at 1125.  This is not the case here.

4

on inapposite cases which pre-date both *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which transformed the pleading standard under Rule 8(a)(2).  As well, Plaintiffs ignore the Eighth Circuit precedent requiring "particularized reason" in the context of consumer "Article III standing to sue." *Wallace*, 747 F.3d at 1030.

Third, Plaintiffs argue that it is "irrelevant" whether Plaintiffs were allegedly bitten by mosquitos while using the candle, because "it does not work for anybody in any real-world setting."  Opp. at 4.  Plaintiffs' argument makes no sense.  If they contend that every single user of a citronella candle "would have been bitten" (*id*.), then it is highly relevant whether—or not—the named Plaintiffs, who purport to represent the class, were in fact allegedly bitten by mosquitos *while* using the candle as intended (other missing allegations are also highly relevant, as noted above).

Fourth and last, Plaintiffs argue that "Plaintiffs were never even required to allege that they were bitten in the first place."  Opp. at 5.  But, as noted above, when Defendants filed a previous motion to dismiss pointing out that Plaintiff did not allege any injury-in-fact and thus lacked standing (*see* Dkt. # 13 at 5-8), in an attempt to cure this deficiency and moot Defendants' motion, Plaintiffs filed the Amended Complaint and alleged they "[were] bitten by mosquitoes" (FAC ¶¶ 17-18), albeit these allegations are inadequate as established above and in Defendant's Motion.  *See* Mot. at 6-8.  Plaintiffs again rely on *Zurn Pex* in arguing they did not need to allege (as they did, though insufficiently) that they were bitten by mosquitos.  Opp. at 5.  However, as noted above, if applicable, *Zurn Pex* supports Defendants since it plainly held that plaintiffs had standing because

"plaintiffs had alleged that their [products] exhibited a defect."  644 F.3d at 617.  Further,

in *Wallace*, which post-dates *Zurn Pex*, the Eighth Circuit clearly held that:  "In the

context of defective products, 'it 'is not enough' for a plaintiff 'to allege that a product

line contains a defect or that a product is at risk for manifesting this defect; rather, the

plaintiffs must allege that ***their*** product ***actually exhibited*** the alleged defect.'"  *Wallace*,

747 F.3d at 1030 (quoting *Zurn Pex*, *supra*) (emphasis in original).[4]

Thus, Plaintiffs failed to adequately allege standing.

## IV.  THE FRAUD CLAIM FAILS BECAUSE PLAINTIFFS DO NOT PLEAD SCIENTER OR RELIANCE

Plaintiffs' Opposition does not cure their failure to adequately plead scienter and

reliance, both indisputably required elements of their fraud claim.

### A.  <u>Plaintiffs Fail to Plead Scienter</u>

Plaintiffs bear the burden of pleading scienter with facts that give rise to a "strong

inference of fraudulent intent," which they can do by alleging "facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness."  *Gabriele v. Am.*

*Home Mortgage Servicing, Inc.*, 503 Fed. Appx. 89, 97 (2d Cir. 2012).  Recklessness is a

---

[4] Plaintiffs attempt to distinguish *Wallace* by arguing that they allege that "<u>all of Defendants'</u> <u>Products are ineffective</u>."  Opp. at 5-6 (emphasis in original).  A similar attempt was recently and soundly rejected in *Polaris Mktg.*, as follows:  "To distinguish this case from *Wallace*, Plaintiffs argue that the vehicles they purchased contain an 'inherent' defect that creates an 'ever-present safety risk.'  But this distinction falls short.  In *Zurn*, a putative class of homeowners alleged that brass fittings used in the defendant's plumbing systems were inherently defective because they were susceptible to stress corrosion cracking.  644 F.3d at 609.  The Eighth Circuit concluded that the homeowners whose pipes had *not* leaked had adequately pleaded an injury in fact by alleging 'a universal inherent defect' ***supported by expert testimony***.  *Id*. at 617.  That injury was 'already ***manifest*** in all systems" because it necessarily "afflict[ed] all of the [products] ***upon*** ***use***."  *Id*.  No such allegations or expert testimony exists here….  [F]or the purpose of Article III standing, 'it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect.'  *Wallace*, 747 F.3d at 1030 (quoting *Zurn*, 644 F.3d at 616)."  *Polaris Mktg.*, 364 F. Supp. 3d at 984 (first italics in original).

high standard, and requires Plaintiffs to demonstrate that Defendants' conduct was "highly unreasonable and . . . represented ***an extreme departure from the standards of ordinary care*** to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 315 (E.D.N.Y. 2002) (emphasis added). Nothing in the Opposition changes the fact that Plaintiffs have failed to meet their burden of pleading a "strong inference" of fraudulent intent. *See* Mot. at 16-17.

First, the articles Plaintiffs cite from the J*ournal of Insect Science* and the J*ournal of the American Mosquito Control Association* (the "Articles") and the *Inside Edition* piece[5] cannot rescue Plaintiffs' fraud claim.[6] Although Plaintiffs try to dramatize the fact that Defendants did not reference the Articles by name in their Motion (*see* Opp. at 16-17), that was because Plaintiffs ***never once allege*** in the Amended Complaint (nor can they) that Defendants specifically knew about the Articles.[7] *See* FAC ¶¶ 5-14 (alleging only that Defendants are aware of the July 2016 Press Release and the *Insider Edition* piece); ¶ 59 (alleging only conclusorily and generally that "Defendants are . . .

---

[5] Although the Court need not rule on the admissibility of evidence to dismiss the Amended Complaint, it is well-established that such articles are inadmissible hearsay unless they fall within a hearsay exception, and here they do not. *See, e.g.*, *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 873 (E.D.N.Y. 2018) (excluding webpage and scientific article as inadmissible hearsay).

[6] As Plaintiffs admit, the *Journal of Insect Science* article discusses only Cutter Citro Guard, one of the two Products at issue, in connection with the *Aedes Aegypti* type of female mosquitos, and the *Journal of the American Mosquito Control Association* article discusses citronella candles generally and does not even mention the Products at all. *See* FAC at fn. 1, 3; Opp. at 16.

[7] Plaintiffs conclusorily claim, ***for the first time on Opposition***, that Defendants were aware of the findings of the Articles. *See* Opp. at 16-17. This Court should reject Plaintiffs' attempt to amend their Amended Complaint ***for a second time*** in an opposition brief. *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

undoubtedly aware of the studies . . . that their Product does not work"). In fact, the Amended Complaint is so vague that Defendants cannot possibly know what Plaintiffs are referring to by "the studies." *Id*.

Even had Plaintiffs properly alleged that Defendants knew of the Articles (and they did not), the sole basis for that supposed knowledge is Defendants are "top distributors of pest repellant products in the United States." FAC ¶ 59. This conjecture allegation is analogous to the "core operations" doctrine in the securities law context—by which plaintiffs attempt to impute knowledge when alleged misstatements concern a company's core products—and which courts have increasingly questioned and often reject. *See In re Pretium Res. Inc. Sec. Litig.*, 256 F. Supp. 3d 459, 474 (S.D.N.Y. 2017) ("the Second Circuit has expressed doubt as to whether the core operation doctrine has survived" the passage of the Private Securities Litigation Reform Act); *see also In re Hain Celestial Grp. Inc., Sec. Litig.*, No. 2:16-cv-04581 (ADS)(SIL), 2019 WL 1429560, at *19 (E.D.N.Y. Mar. 29, 2019) ("business allegations are not evidence of scienter unless the magnitude of fraud is startling in relation to core products").

Likewise, Plaintiffs' conclusory allegation that Defendants "were clearly aware" of the *Inside Edition* piece "because Defendants, like most companies, care about their reputations and regularly monitor their publicity" (*see* FAC ¶ 13; Opp. at 18), is nothing more than "rank speculation" on what "large compan[ies] such as [Defendants] would have learned" about the Products, which "does not support a strong inference of intent." *Rodriguez v. Hanesbrands Inc.*, No. 17-CV-1612 (DLI), 2018 WL 2078116, at *8 (E.D.N.Y. Feb. 20, 2018) (dismissing fraud claim)*, report and recommendation adopted*,

2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018).  Plaintiffs merely regurgitating conclusory statements that Defendants had knowledge is insufficient as a matter of law.  *See In re CINAR Corp.*, 186 F. Supp. 2d at 316 (E.D.N.Y. 2002) ("mere speculation or conclusory allegations that [defendant] knew about the fraud do not satisfy the pleading requirements.  Plaintiffs must plead sufficient ***facts*** with particularity that would give rise to a strong inference of scienter.") (emphasis in original).

Second, contrary to Plaintiffs' characterization, the July 2016 Press Release is not a smoking gun that revives their fraud claim.  *See* Opp. at 17.  The July 2016 Press Release merely relates to citronella oil as an ingredient in personal mosquito repellant applied to one's skin or clothing (noting that "only 40% frequently apply mosquito repellant, the most effective way to prevent mosquito bites when spending time outdoors").  The press release factually states that citronella oil is not one of the personal repellant ingredients recommended by the CDC.  However, contrary to plaintiffs' spin, the press release does not comment on the efficacy of citronella candles, which deploy citronella oil in an entirely different manner than the application of a personal repellant.

Finally, the cases Plaintiffs cite in their Opposition are distinguishable and actually undermine their claim.[8]  Thus, nothing in the Amended Complaint or Opposition negates

---

[8] *Ebin v. Kangadis Food Inc.* involves defendant-company's representation of "100% Pure Olive Oil."  No. 13 CIV 2311 JSR, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013).  The *Ebin* court concluded that plaintiffs had adequately pled scienter with specific allegations that defendants knew of and violated every applicable labeling standard—promulgated by the FDA, the USDA and the International Olive Oil Council, and the State of New York—and that an executive of defendant-company tried but failed to prevent a state from banning olive oil that does not comply with the standards.  *Id.* at *2-3, 6.  By contrast, Plaintiffs here have not alleged that Defendants violated any standard or regulation applicable to citronella candles, nor have they alleged that any executive's knowledge (if any) should be attributed to Defendants.

the conclusion that Plaintiffs' fraud claim must be dismissed, because they have not

alleged **any** particularized facts to support their claim. *See Woods v. Maytag Co.*, No. 10-

CV-0559 ADS, 2010 WL 4314313, at *7-9 (E.D.N.Y. Nov. 2, 2010) (dismissing fraud

claim for lack of factual specificity to raise a "strong inference" of fraudulent intent).

### B.   Plaintiffs Have Failed to Plead Reliance with Particularity

Plaintiffs' fraud claim must also be dismissed because the Amended Complaint

fails to plead reasonable reliance with particularity as required by Rule 9(b), and the

Opposition does not change that reality. *See Filler*, 156 F. App'x at 416; *In re Bear*

*Stearns Cos., Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014)

("To plead common law fraud, a plaintiff must allege with particularity that it actually

relied upon the supposed misstatements.").

The Second Circuit has articulated a two-tier standard for determining a plaintiff's

duty to investigate:  "When matters are held to be peculiarly within defendant's

knowledge, it is said that plaintiff may rely without prosecuting an investigation, as he

has no independent means of ascertaining the truth. . . . By contrast, when

misrepresentations have been held to concern matters that were not peculiarly within the

---

*Hughes v. Ester C Co.* concerns defendants' claims of scientific backing for the performance and superiority of defendants' vitamin products.  930 F. Supp. 439 (E.D.N.Y. 2013).  The court concluded plaintiffs pleaded scienter only because they bolstered their allegations by pointing to the lack of credible science backing up defendants' representations, a scientific study specifically targeting the product at issue and disputing several of defendants' principal representations, and FTC investigations into several of defendants' competitors regarding similar product claims.  *Id*. at 450.  Here, the Amended Complaint is devoid of such allegations to bolster Plaintiffs' boilerplate allegations on scienter.

In *Chill v. Gen. Elec. Co.*, the Second Circuit actually dismissed plaintiffs' fraud claim because "the facts alleged, if true, do not add up to circumstantial evidence of conscious misbehavior or recklessness."  101 F.3d 263, 270 (2d Cir. 1996).  The Second Circuit further acknowledged "[t]he significant burden on the plaintiff in stating a fraud claim based on recklessness."  *Id*.

defendant's knowledge, ***New York courts have often rejected plaintiff's claim of justifiable reliance***." *Mallis v. Bankers Tr. Co.*, 615 F.2d 68, 80 (2d Cir. 1980) (emphasis added).  Applying this standard, courts have repeatedly dismissed claims where plaintiffs have available the means to conduct an investigation but fail to do so. *See, e.g.*, *Pelman ex rel. Pelman v. McDonald's Corp.*, No. 02 CIV 7821 (RWS), 2003 WL 22052778, at *7 (S.D.N.Y. Sept. 3, 2003) (no reliance where consumer-plaintiffs "have not alleged that McDonald's controlled all relevant information" and "[i]ndeed, the complaint cites the complete ingredients of several McDonald's products"), *vacated in part on other grounds*, 396 F.3d 508 (2d Cir. 2005); *Gomez-Jimenez v. N.Y. Law Sch.*, 943 N.Y.S.2d 834, 857 (N.Y. Sup. Ct. 2012) (dismissing plaintiffs' fraud claim regarding defendant's marketing materials "because they had ample information from additional sources and thus the opportunity to discover the then-existing employment prospects at each stage of their legal education through the exercise of reasonable due diligence").

Here, Plaintiffs claim (in contravention to case law and solely on the basis of a dictionary definition) that "'peculiarly' does not mean 'exclusively'" but actually means "very or specially."  Opp. at 11.  And then, Plaintiffs conclusorily allege—*for the first time in their opposition brief*[9]—that "the knowledge that citronella is ineffective is 'specially' within the knowledge of Defendants . . . as opposed to Plaintiffs, with no experience in the industry."  *Id.*  In addition to improperly attempting to amend their

---

[9] The Amended Complaint does not allege that "the knowledge that citronella is ineffective is 'specially' within the knowledge of Defendants," nor that Plaintiffs have "no experience in the industry."  Plaintiffs' attempt to amend again without leave should be rejected.  *See Morgan*, 868 F.2d at 995.

pleading again through an opposition brief, Plaintiffs have misstated the standard.  The

New York Court of Appeals has long held that if one "has the means available to him of

knowing, by the exercise of ordinary intelligence, the truth or the real quality of the

subject of the representation, he must make use of those means, or he will not be heard to

complain that he was induced to enter into the transaction by misrepresentations."

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 n.13 (2d Cir. 1984)

(quoting *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 600 (N.Y. 1959)).  Indeed,

many courts have equated "peculiarly" with "exclusively."[10]  *See, e.g.*, *Colasacco v.*

*Robert E. Lawrence Real Estate*, 890 N.Y.S.2d 114, 117 (N.Y. App. Div. 2009)

(dismissing fraud claim because "[t]here was no allegation in the complaint that [the

alleged misrepresentations] were within the ***exclusive*** knowledge of the defendants.")

(emphasis added); *Jordache Enters., Inc. v. Gettinger Assocs.*, 575 N.Y.S.2d 58, 59 (N.Y.

App. Div. 1991) ("reliance upon an alleged misrepresentation by the defendant

concerning the existence of a certificate of occupancy was not reasonable where the

terms of the certificate of occupancy, a public record, were not within the ***exclusive***

knowledge of the defendant") (emphasis added); *Levin v. Gallery 63 Antiques Corp.*, No.

04-CV-1504 (KMK), 2006 WL 2802008, at *9 (S.D.N.Y. Sep. 28, 2006) (dismissing

fraud claim where there was no allegation "that the information required to confirm or

disprove the validity of Defendants' representation was ***only*** available to Defendants")

---

[10] Indeed, this is the better interpretation, otherwise, the Second Circuit's standard in *Mallis* that
a "plaintiff may rely without prosecuting an investigation, ***as he has no independent means of***
***ascertaining the truth***," only when "matters are held to be peculiarly within defendant's
knowledge," would be self-contradictory.  *Mallis*, 615 F.2d at 80.

(emphasis added). *See also Simms v. Biondo*, 816 F. Supp. 814, 822 (E.D.N.Y. 1993) ("Facts which are accessible as a matter of public record bar a claim of justifiable reliance necessary to sustain a cause of action for fraud.").

Plaintiffs essentially argue that they can do nothing by virtue of their self-characterization as "unsophisticated consumers." *See* Opp. at 9. That is not the law; reliance by consumers is not presumed. *See Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593, 600 (N.Y. App. Div. 1998) ("Reliance on defendants' misrepresentations will not be presumed where plaintiffs had a reasonable opportunity to discover the facts about the transaction beforehand by using ordinary intelligence."). Plaintiffs are not relieved of their duty to utilize "the means available to [them] of knowing, by the exercise of ordinary intelligence" information related to the Products, most notably when those same plaintiffs allege that contemporaneously-available, Internet-searchable reports and articles supposedly call into question the effectiveness of citronella candles. Plaintiffs purposefully misconstrue Defendants' arguments regarding the fraud reliance element as an argument that "plaintiff should have known they were lying." Opp. at 7. Contrary to Plaintiffs' assertion, Defendants have not conceded that the Products reflect any misrepresentation. Defendants simply note that Plaintiffs cannot have it both ways: they cannot point to contemporaneously available purported research on citronella candles but also conveniently feign ignorance in claiming reliance on the Product labels.

The cases cited in Plaintiffs' Opposition are either irrelevant or do not hold to the contrary.[11] *Amusement Industry* involves a fiduciary relationship between the parties—whereby the beneficiary of a fiduciary relationship is entitled to rely on the statements of the other without independent inquiry—which is not present here.  2013 WL 628533, at *13.  *Christophides* cites to and relies on the Second Circuit's *Mallis* decision, that "analysis of justifiable reliance in fraud cases under New York law has taken account of the degree to which the truth was accessible to the defrauded person."  106 F.3d at 26-27. *Johnson v. Atkins Nutritionals, Inc.* concerns an unjust enrichment claim under Missouri, not a fraud claim under New York law.  No. 2:16-CV-04213-MDH, 2017 WL 6420199, at *11 (W.D. Mo. Mar. 29, 2017).

At bottom, Plaintiffs have not alleged that they conducted *any* investigation—let alone the exercise of ordinary intelligence—and their fraud claim fails for this reason.

## V.   PLAINTIFFS HAVE FAILED TO PLEAD RELIANCE, AN ELEMENT OF A GBL § 350 CLAIM

Contrary to Plaintiffs' assertions (Opp. at 7), *Koch v. Greenberg* did not foreclose reliance as a required element of a GBL § 350 claim.  14 F. Supp. 3d 247, 262 (S.D.N.Y. 2014), *aff'd*, 626 F. App'x 335 (2d Cir. 2015).  While Defendants acknowledged that there is a split among the New York courts (*see* Mot. at n.5), numerous cases decided after *Koch* require reliance as a necessary element of a GBL § 350 claim.  *See, e.g.*,

---

[11] Plaintiffs complain that Defendants relied on cases involving sophisticated parties, (Opp. at 11 n.4), yet they too cite a spat of cases involving complex commercial transactions involving sophisticated parties for support.  *E.g.*, *Banque Franco-Hellenique de Commerce Int'l et Mar., S.A. v. Christophides,* 106 F.3d 22 (2d Cir. 1997) (involving multi-million loan agreement); *Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C.*, No. 11 CIV. 4416 LAK, 2013 WL 628533 (S.D.N.Y. Feb. 15, 2013) (involving multi-million dollar real estate transaction).

*Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, n.8 (E.D.N.Y. 2018) ("for § 350 claims, plaintiffs must also plead reliance."); *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp.3d 548, 558 (S.D.N.Y. 2017) ("A claim of false advertising under Section 350 must meet all of the same elements as a claim under Section 349, and the plaintiff must further demonstrate proof of actual reliance."); *Daniel v. Mondelez Int'l, Inc.*, 287 F.Supp.3d 177, n.6 ("To prevail on a claim under GBL [section] 350, a plaintiff must demonstrate reliance on defendants' false advertising."); *Tyman v. Pfizer, Inc.*, No. 16-CV-06941 (LTS) (BCM), 2017 WL 6988936, at *23 (S.D.N.Y. Dec. 27, 2017) ("To prevail on their negligent misrepresentation, breach of warranty, and NYGBL § 350 claims, plaintiffs must plead and prove that they relied on defendants' statements."). The Second Circuit has not weighed in on this issue, and these cases remain good law.

Plaintiffs fall short of meeting the standard for reliance. As discussed above, Plaintiffs failed to use ordinary intelligence or take note of information ***they themselves claim was available***. *See Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *2 (E.D.N.Y. July 18, 2013) ("[r]eliance on defendants' misrepresentations will not be presumed where plaintiffs had a reasonable opportunity to discover the facts about the transaction beforehand by using ordinary intelligence or where a variety of factors could have influenced a class member's decision to purchase."); *Small*, 679 N.Y.S.2d at 600 ("Only when defendants effectively controlled all the information about the transaction will the existence of misrepresentations give rise to an inference of reliance without need for further proof.").

Plaintiffs do not adequately describe their own experiences with the Products,
relying on news reports and articles instead, but cannot claim that there is a definitive
consensus regarding the ineffectiveness of citronella while also claiming that this
information was inaccessible to consumers.

## VI.    EXPRESS WARRANTY CLAIMS FAIL BECAUSE PLAINTIFFS FAIL TO ALLEGE PRIVITY

In their Opposition, Plaintiffs overstated the authority of the 1962, pre-U.C.C. case
*Randy Knitwear v. Am. Cynide Co.*,[12] 11 N.Y.2d 5, 14 (N.Y. 1962), and grossly
mischaracterized the three cases cited in Defendants' Motion—*Dibartolo v. Abbott Labs.*,
914 F. Supp. 2d 601 (S.D.N.Y. 2012); *Koenig v. Boulder Brands, Inc.*, 2014 WL 349706
(S.D.N.Y. Jan. 31, 2014); and *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547 (S.D.N.Y.
2012)—as outliers in holding that privity is required for breach of express warranty
claims.  *See* Opp. at 12.  In fact, numerous recent cases, in addition to *Dibartolo*, *Koenig*,
and *Ebin*, have reiterated privity as a requirement for express warranty claims.  *See, e.g.*,
*Landtek Group, Inc. v. North American Specialty Flooring, Inc.*, No. CV 14-1095 (SJF)
(AKT), 2016 WL 11264722, at *36 (E.D.N.Y. Aug. 12, 2016) ("Pursuant to New York
law, in order to sustain an action based upon a breach of warranty theory, it is essential
that privity be established."); *Almonte v. Averna Vision & Robotics, Inc.*, 128 F. Supp. 3d
729, 755 (W.D.N.Y. 2015) ("[U]nder New York law, privity is an essential element of a
cause of action for breach of express warranty, unless the plaintiff claims to have been

---

[12] Plaintiffs' heavy reliance on an official comment under N.Y. U.C.C. §2-313, to argue that the
N.Y.U.C.C. did not disturb *Randy Knitwear*, is unwarranted.  *See* Opp. at 13-14.  The comment
is ambiguous, intended only to offer "guidance in dealing with further cases as they arise," and
neither rejects nor endorses *Randy Knitwear*'s privity ruling.  N.Y. U.C.C. § 2-313 cmt. 2
(McKinney 2001).

personally injured.") (internal citation and quotations omitted); *Carcone v. Gordon Heating & Air Conditioning Co., Inc.*, 212 A.D.2d 1017 (4th Dep't 1995) ("Privity is also an essential element of a cause of action for express warranty . . . .").

Of the cases cited by Plaintiffs in support of *Randy Knitwear*, most involve consumable or personal care products—which are subject to strict labeling and advertising regulations imposed by the FDA, and for which the representations (e.g., "all natural ingredients") correspond to specific, measurable characteristics. *See, e.g., Gasser v. Kiss My Face, LLC*, 2017 WL 4773426 (N.D. Cal. Oct. 23, 2017) (body wash, body lotion, and sunscreen).[13] The claims in those cases are more robust and empirically provable or disprovable; by contrast, Plaintiffs' claims here related to candles are barebones and conclusory.

In every other case cited by Plaintiffs that did not involve consumable or personal care products, plaintiffs were *unsuccessful* in attempting to assert their express warranty claims. *See Westport Marina, Inc. v. Boulay*, 783 F. Supp. 2d 344, 356 (E.D.N.Y. 2010) (granting defendants' motion for summary judgment as to express warranty claims); *Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 108 (W.D.N.Y. 2011) (same); *Prue v.*

_____

[13] *And also Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185 (S.D.N.Y. July 20, 2016) (multivitamin chewable tablets); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283 (S.D.N.Y. 2015) (cold remedy products); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) (personal care products, including moisturizing oil and soufflé, shave gel, shampoo, and conditioner); *Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) (herbal supplement); *Ault v. J.M. Smucker Co.*, 2014 WL 1998235 (S.D.N.Y. May 15, 2014) (cooking oil); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993 (S.D. Cal. 2011) (weight loss supplement); *Yates v. OrthoMcNeil-Jansen Pharms. Inc.*, 808 F.3d 281 (6th Cir. 2015) (birth control patch); *Price v. L'Oreal USA, Inc.*, 2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) (shampoo, conditioner, and hair spray).

*Fiber Composites, LLC*, 2012 WL 1314114, at *10 (E.D.N.Y. Apr. 17, 2012) (dismissing express warranty claims); *Freidman v. Gen. Motors Corp.*, 2009 WL 454252, at *2 (S.D.N.Y. Feb. 23, 2009) (allowing plaintiffs to replead express warranty claim but express warranty claim was later dismissed, 2009 WL 1515031 (S.D.N.Y. May 29, 2009)).  Plaintiffs' express warranty claim here is similarly deficient.

## VII.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

The unjust enrichment claim fails under either or both Missouri and New York law.  Contrary to Plaintiffs' argument (Opp. at 21), *Landers v. Monsanto Co.*, No. 1:17-CV-20 SNLJ, 2017 WL 3531378 (E.D. Mo. Aug. 17, 2017), is similar to this case.  In *Landers*, this Court dismissed the unjust enrichment claim because, like here, plaintiffs only alleged an indirect conferment of "benefit" on the defendant:  "plaintiffs have not pleaded unjust enrichment because the money paid—i.e., the 'benefit'—to defendant was not paid by plaintiffs." *Id*. at *7.  The same is true here—Plaintiffs paid the money to/conferred "benefit" on a Home Depo, not Defendants.  FAC ¶¶ 17-18.  Plaintiffs are bound by their allegations, and cannot avoid them or the dismissal of the unjust enrichment claim pursuant to *Landers, supra*.

Defendants also established that the unjust enrichment claim is duplicative of Plaintiffs' other claims, and should be dismissed for this additional reason.  *See* Mot. at 22.  Plaintiffs do not dispute that their unjust enrichment claim is duplicative and that multiple courts routinely dismiss such duplicative claims on a motion to dismiss.  *Id*. (citing cases).  Rather, Plaintiffs argue that, in *some* cases, an unjust enrichment claim may proceed past the pleading stage.  *See* Opp. at 22.  However, all of Plaintiffs' cases

are inapposite.  Unlike here, in each of the cases Plaintiffs cited, there was a valid reason

not to dismiss the unjust enrichment claim.[14]

In sum, Plaintiffs concede their unjust enrichment claim is wholly duplicative and

identify no good reason for it not to be dismissed now.[15]

## VIII.   PLAINTIFFS' SUPPLEMENTAL AUTHORITY IS INAPPOSITE

On December 19, 2019, Plaintiffs filed a Notice of Supplemental Authority (Dkt. #

29), arguing that *Krumm v. Kittrich Corp.*, No. 4:19-cv-00182-CDP (E.D. Mo. Dec. 17,

2019), helps defeat *some* of Defendants' arguments in their Motion.  Plaintiffs overstate

the impact of *Krumm*, which has **no effect** on the following issues:

(1) Plaintiffs' lack of standing to seek injunctive relief, which Plaintiffs concede

(*see* Section I, *supra*);

(2) Lack of personal jurisdiction over Spectrum—unlike in *Krumm*, where plaintiffs

purchased the products in Missouri and "[defendant] concedes, that it conducted business

in Missouri by marketing and selling the repellant in the state" (at 11), here, Plaintiffs

allegedly purchased the Products in New York and, despite having had an opportunity to

---

[14] *I.e.*, *Pramer, S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 100 (N.Y. App. Div. 1st Dep't 2010) (finding unjust enrichment claim *not* duplicative); *Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 795 (S.D.N.Y. 2017) (similar: "the redundancy argument is inapplicable"); *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 454-55 (S.D.N.Y. 2014) (dismissing unjust enrichment claim to the extent it was duplicative, and allowing only *non-duplicative* parts to proceed).

[15] Plaintiffs do not dispute that the Amended Complaint fails to place any temporal limitation on any of the claims which Plaintiffs seek to pursue on behalf of themselves and the class.  *See* Opp. at 22.  There is no reason to wait for "the class certification stage," as Plaintiffs argue, (*id.*) to dismiss all claims outside the relevant limitations periods.  Plaintiffs cite no authority in support of their argument.  *But see, e.g., Koenig*, 995 F. Supp. 2d at 291 (dismissing class claims "to the extent that they include a GBL § 349 claim … and a breach of express warranty claim" outside the statutes of limitation).

amend, Plaintiffs failed to make a ***single*** allegation that could subject non-resident Spectrum to jurisdiction in Missouri.  *See* Section II, *supra*.  Whether *BMS* applies to class actions is irrelevant to this analysis or these dispositive facts.

(3) Plaintiffs' failure to sufficiently plead any of their claims—i.e., violations of GBL §§ 349 and 350, breach of express warranty, unjust enrichment, and fraud (*see* Sections IV-VII).  None of these claims were alleged in or addressed by *Krumm*.

Plaintiffs' reliance on *Krumm* to cure their failure to allege an injury-in-fact fails because Plaintiffs *never* argued in their Opposition "an economic injury in fact," which is what *Krumm* addressed (at 4-6).  And *Krumm* does not change the fact that Plaintiffs' conclusory allegations are not sufficient under Eighth Circuit law:  "Without any particularized reason to think the consumers' own [products] actually exhibited the alleged … defect, the consumers lack Article III standing to sue."  *Wallace*, 747 F.3d at 1030.

Lastly, Plaintiffs argue *Krumm* helps them with "pleading[] concerning scientific evidence."  Dkt. # 29.  Not so.  In *Krumm*, the alleged studies were product-specific, including "an independent laboratory test, commissioned by Krumm's counsel in early 2018, which 'revealed that the [repellant at issue] was ineffective in repelling … mosquitoes.'"  *Id*. at 17.  Here, there are no such "studies" or even Product-specific allegations.

## IX.    CONCLUSION

For all the foregoing reasons and those stated in Defendants' Motion, the Amended Complaint should be dismissed in its entirety with prejudice.

20

DATED:  December 20, 2019        Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

By  /s/ Mary Ann L. Wymore
     Mary Ann L. Wymore, MO #44061
     mlw@greensfelder.com
     10 South Broadway, Suite 2000
     St. Louis, Missouri 63102
     Telephone: (314) 516-2662
     Facsimile: (314) 345-5488

Jeffrey L. Richardson
(upon *pro hac vice* application)
Valentine A. Shalamitski
(upon *pro hac vice* application)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067

Jamie A. Levitt
(upon *pro hac vice* application)
Monica Chan
(upon *pro hac vice* application)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601

*Attorneys for Defendants United Industries
Corporation and Spectrum Brands, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 20th day of December, 2019, the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

      /s/ Mary Ann L. Wymore