UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELBA POPPITI and MICHAEL DESTIO, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 4:19-cv-02028-SNLJ ) |
| UNITED INDUSTRIES CORPORATION and SPECTRUM BRANDS, INC. | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendants United Industries Corporation and Spectrum Brand, Inc.'s motion to dismiss (#22) the first amended complaint. For the following reasons, that motion is **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND

This putative class action asserts that certain popular citronella candles are ineffective at repelling mosquitos, and that a class of plaintiffs were misled by defendants into buying these nugatory products from popular retailers like Home Depot. The products at issue include "Cutter Citro Guard Citronella Candles" and "Repel Insect Repellent Citronella Candles," both purportedly "contain[ing] 3% citronella" and both stating prominently on their packaging that they "repel mosquitoes & other flying insects."

Plaintiffs point to several research findings that allegedly conclude citronella candles have "no repellency effect." In fact, plaintiffs say defendant Spectrum Brands, itself, published a press release in 2016 acknowledging that while "67% of respondents [in a survey of 1,176 Americans] identified citronella as a very or somewhat effective active ingredient for repelling insects," the ingredient "citronella is not one of the active ingredients that the CDC recommends as effective." Plaintiffs also point to a 2016 *Inside Edition* television program that "put to the test" certain repellent products, including what plaintiffs assert was defendants' Repel Citronella Candle that "on a scale of 1 to 10" scored "about a 1," and say they believe defendants were made aware of *Inside Edition's* critical findings. Nonetheless, these "ineffective" products continued to be marketed and sold as being effective at repelling mosquitos.

The individual plaintiffs say they purchased the Cutter and Repel candles for roughly six and seven dollars respectively, while shopping at two different Home Depot stores in New York. Both say they carefully read the product instructions and used the products according to those instructions. And both say they relied on label advertising suggesting the candles "repel[] mosquitoes and other flying insects." Despite this, both were purportedly bitten by mosquitoes. They say they wouldn't have purchased the candles had they not been misled by defendants about their effectiveness.

Defendants collectively move to have plaintiffs' case dismissed under various provisions of Rule 12(b) of the Federal Rules of Civil Procedure. Defendants say that plaintiffs lack standing for want of an injury-in-fact under Rule 12(b)(1), that this Court lacks personal jurisdiction over Spectrum Brands under Rule 12(b)(2), and that plaintiffs'

claims fail for various reasons under Rule 12(b)(6).[1] These arguments are addressed in turn below.

## II. ANALYSIS

### A. Rule 12(b)(2) – Existence of Personal Jurisdiction over Spectrum Brands

Defendants argue that this Court lacks personal jurisdiction over non-resident Spectrum Brands. Personal jurisdiction, of course, can be either general or specific. Plaintiffs openly acknowledge Spectrum Brands is neither incorporated in nor has its principal place of business in Missouri. Thus, general jurisdiction is lacking here. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (general jurisdiction, as applied to corporate entities, adheres to an entity's "place of incorporation" or "principal place of business").

On the other hand, for this Court to exercise specific jurisdiction, "'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S.Ct. 1773, 1780 (2017) (quoting *Daimler*, 571 U.S. at 127). In other words, there must be "an *activity or an occurrence that takes place in the forum*[.]" *Bristol-Myers,* 137 S.Ct. at 1780 (emphasis added). In their brief, plaintiffs say nothing more than "[they] have made specific allegations of wrongdoing as to Spectrum Brands … that is sufficient." It is plaintiff's response, however, that is woefully insufficient, bordering on the frivolous.

---

[1] Defendants also challenge plaintiffs' standing under Rule 12(b)(1) to seek future injunctive relief as requested in Counts I and II of the first amended complaint. Plaintiffs did not respond to this line of argument, however, other than to say in a footnote that they "will not pursue claims for injunctive relief."

3

Suffice it to say that this Court has found nothing in the complaint that would even arguably constitute the kind of contacts with the forum necessary to satisfy specific personal jurisdiction. Spectrum Brands will, therefore, be dismissed.

**B. Rule 12(b)(1) – Existence of an Injury-in-Fact for Purposes of Standing**

Defendants next argue that the "Amended Complaint fails to sufficiently allege an injury-in-fact personal to plaintiffs." Defendants say "[p]laintiffs fail to allege … whether any mosquitos bit them while the candle was burning as intended and, if any did, the details of how it happened, such as where plaintiffs were, how long the candles had been burning, how far plaintiffs were from the candles, and whether it was windy." Plaintiffs respond that defendants' "deposition-style questions" go beyond what is required by the federal rules—citing specifically to Federal Rule of Civil Procedure 8(a)(1)—and, as such, it simply "does not matter which way the wind was blowing or what [plaintiffs] ate for breakfast."

Plaintiffs are correct. To establish an injury-in-fact, plaintiffs must show that they "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016). An injury is particularized when it "affect[s] the plaintiff in a personal and individual way." *Id*. An injury is concrete when it "actually exists," which is to say that it is "real" rather than "abstract." *Id*.

Here, accepting the facts of the amended complaint as true, plaintiffs say they purchased defendants' candles while relying on their prominent labeling—that is, that the candles effectively "repel mosquitos & other flying insects." Plaintiffs then took the

candles home, "used [them] according to [their] directions," and nonetheless were "bitten by mosquitoes." Certainly, their injury is particularized; plaintiffs were, themselves, affected when the candles they purchased and used did not repel mosquitoes as advertised. Plaintiffs' injury is also concrete in that they suffered an actual, non-speculative economic harm—even if only a few dollars—having "overpaid for the products on account of their misrepresentations." *See Wallace v. ConAgra Foods, Inc*., 747 F.3d 1025, 1029 (8th Cir. 2014) (the issue of particularization aside, paying too much for a product based on its misleading advertising establishes a concrete, non-speculative injury). Accordingly, an injury-in-fact has been established on the bases of these allegations. *See Spokeo*, 136 S.Ct. at 1548; *see also Krumm v. Kittrich Corp*., 2019 WL 6876059 at *2 (E.D. Mo. Dec. 17, 2019) (Perry, J.) (individual consumer in class-action setting sufficiently alleged injury-in-fact who was misled into purchasing mosquito repellant based on its advertising and was later bitten by mosquitoes despite having followed the repellant's directions).

### C. Rule 12(b)(6) – Sufficiency of Scienter Pleadings in Plaintiffs' Fraud Claims

Defendants next challenge plaintiffs' fraud claim—Count V—on the basis that they have not adequately alleged scienter. To the contrary, plaintiffs point to "four bases that support a finding of scienter," including: (1) that defendants were aware of peer-reviewed studies showing that one of defendants' products, Cutter Citro Guard, had "no repellency effect"; (2) that defendants were aware of other peer-reviewed studies showing that citronella is generally ineffective as a mosquito-repelling ingredient; (3) that

5

defendants were aware of an *Inside Edition* television program that tested defendants' candles and found them to be ineffective; and (4) that defendants themselves acknowledged the ineffectiveness of their citronella candle products in a 2016 press release in which they openly admitted the Center for Disease Control does not count citronella as an effective active ingredient in repelling mosquitoes. On this cumulative evidence, plaintiffs say they "present sufficient evidence showing that defendants knew their product was ineffective, yet sold it anyway to unsuspecting customers."

Under New York Law, which the parties agree applies to this case, a plaintiff claiming common law fraud is required to plead scienter. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F.Supp.3d 401, 446 (S.D.N.Y. 2014). When that claim is brought in federal court, a plaintiff must also satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Id.* "Although a plaintiff may allege fraudulent intent generally under Rule 9(b), he still must provide some *minimal factual basis* for conclusory allegations of scienter that *give rise to a strong inference of fraudulent intent.*" *United States v. UBS Securities LLC.*, 2019 WL 6721718 at *9 (E.D.N.Y. Dec. 10, 2019) (quoting *Brookhaven Town Conservative Comm. v. Walsh*, 258 F.Supp.3d 277, 286 (E.D. N.Y. 2017)). A party can establish a strong inference of fraudulent intent by "(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 Fed.Appx 89, 97 (2d Cir. 2012) (quoting *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996)).

6

In consumer fraud cases where scienter was found to be sufficiently pled, the pleadings usually assert particular facts tending to show a defendant's knowledge of the falsity of their representations. *See, e.g., Greene v. Gerber Prods. Co.*, 262 F.Supp.3d 38, 73 (E.D.N.Y. 2017) (scienter sufficiently pled where plaintiff alleged results of defendant-sponsored study showed no support for defendant's health claims and where defendant was purportedly aware of the FDA's criticism of these claims); *Catalano v. BMW of North America LLC.*, 2016 WL 3406125 at *4 (S.D.N.Y. June 16, 2016) (scienter sufficiently pled where it was alleged that defendant knew of numerous customer complaints made to government agencies and on consumer forums, and where defendant had in its possession purportedly corroborating repair invoice sand warranty claims); *Woods v. Maytag Co.*, 807 F.Supp.2d 112, 126 (E.D.N.Y. 2011) (scienter sufficiently pled where plaintiff alleged manufacturer attempted to conceal problems by encouraging repairmen not to generate incident reports who repeatedly faced similar issues with product).

In review of these cases, this Court has little trouble concluding that scienter has been sufficiently pled, here, with "some minimal factual basis." *UBS Securities LLC.*, 2019 WL 6721718 at *9. The various peer-reviewed studies plaintiffs point to arguably suggest defendants were aware of a growing lack of scientific support for their claims. *See Hughes v. Ester C Co.*, 930 F.Supp.2d 439, 473 (E.D.N.Y. 2013) (scienter shown where plaintiffs pointed to defendant's awareness of a lack of supporting scientific evidence in the form of a critical study). And that awareness is buttressed by defendants' own press release that seems to undercut their product labeling by openly acknowledging

7

government agency criticisms about citronella effectiveness as a mosquito repellant. Defendants' second point is denied.

### D. Rule 12(b)(6) – Sufficiency of Reliance Pleadings in Plaintiffs' Fraud Claims

Defendants also argue that plaintiffs' common law fraud claim must fail because they "cannot establish justifiable reliance when, by the exercise of ordinary intelligence, [they] could have learned of the information [defendants'] withheld." In essence, defendants say the truth—if plaintiffs' claims are to be believed—was not "exclusively within [defendants'] domain." Plaintiffs were capable of ascertaining the truth by independent means, defendants say, as shown by plaintiffs' own identification of the studies and press releases now relied upon in the amended complaint.

Defendants' argument has some credence. Unlike plaintiffs' deceptive acts and false advertisement claims (Counts I and II) under New York General Business Law Sections 349 and 350, "common law fraud requires an investigation" by plaintiffs in order to shown material reliance. *Daniel v. Mondelez Int'l, Inc.*, 287 F.Supp.3d 177, 199 n.21 (E.D.N.Y. 2018). But that investigatory duty is not boundless. The question is, ultimately, whether the plaintiff had a "reasonable opportunity," using "ordinary intelligence," to discover the truth. *Gomez-Jimenez v. New York Law School*, 943 N.Y.S.2d 834, 853 (N.Y. Sup. Ct. 2012), *aff'd,* 103 A.D.3d 13 (2012). As the Second Circuit explained it, "[r]easonable reliance entails a duty to investigate the legitimacy of [a representation] *where plaintiff was placed on guard or practically faced with the facts.*" *Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2d 2006) (emphasis

8

added). Thus, in *Daniel*, a plaintiff alleging defendant misrepresented the amount of candy included in a boxed container failed to establish reasonable reliance "[s]ince a simple investigation [of the product label]"—that accurately stated the amount of candy included—"would have dispelled any misrepresentation as to the amount of food arising from the size of the box." 287 F.Supp.3d at 199.

*Daniel* is a textbook example where the plaintiff is "practically faced with the facts"—facts the law will not permit a plaintiff to blindly ignore. *Crigger*, 443 F.3d at 234. In this case, by contrast, defendants' own internal study concludes "82% [of Americans] mistakenly believe at least one product sold as mosquito repellent but not recommended by the CDC will protect them from mosquitoes"—citronella not being "one of the active ingredients that the CDC recommends[.]" It would seem, then, that persons of ordinary intelligence have not been able to discern, for themselves, the truth of citronella's efficacy. In this Court's view, defendants' argument that vaguely suggests it is at least theoretically possible for plaintiffs—in the internet age—to discern the truth for themselves goes far beyond what the reasonable opportunity test actually requires.

Furthermore, the courts in New York note that "reasonable reliance is a fact-specific inquiry generally considered inappropriate for determination on a motion to dismiss." *Glidepath Holding B.V. v. Spherion Corp.*, 590 F.Supp.2d 435, 459 (S.D.N.Y. 2007). And "most cases where courts have granted motions to dismiss because of a failure to adequately plead reasonable reliance have concerned situations where a plaintiff failed to examine readily available information, relied on oral representations of information when it could easily have asked for additional information, or failed to

properly investigate a transaction." *Id*. Confronted with none of these situations, this Court declines to weigh the reasonableness of plaintiffs' reliance, here, as a matter of law.

### E. Rule 12(b)(6) – The Need for Privity in Plaintiffs' Express Warranty Claim

Defendants attack plaintiffs' express warranty claim—Count III—saying that "privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have suffered personal injuries (as opposed to solely economic injuries)." And, there being no privity here, defendants conclude Count III must fail as a matter of law. In response, plaintiffs cite a 58-year-old state case, *Randy Knitwear v. Am. Cyanamid Co.*, 11 N.Y.2d 5 (N.Y. 1962)—that plaintiffs say is "still the controlling decision on this issue"—for the proposition that privity is not actually required under New York law. Plaintiffs maintain that more recent cases to the contrary are simply in error.

In *Randy Knitwear*, the New York Court of Appeals—the highest state court in New York—did, indeed, "dispense with" the privity requirement in actions "for breach of express warranty by a remote purchaser against a manufacturer who induced the purchase by representing the quality of the goods in public advertising and on labels which accompanied the goods." *Id*. at 11. In so holding, the court noted that "[t]he world of merchandising is, in brief, no longer a world of direct contract." *Id*. at 12. So, plaintiffs' position would appear sound.

But, as recognized by the Southern District of New York, state and federal courts sitting in New York disagree about the interpretative reach of *Randy Knitwear*. *See Suarez v. California Natural Living, Inc.*, 2019 WL 1046662 at *8 (S.D.N.Y. Mar. 5, 2019). Some hold, as plaintiffs urge here, that "privity is not required to sustain a cause of action seeking to recover for damages for breach of an express warranty." *Id*. (quoting *Murrin v. Ford Motor Co.*, 303 A.D.2d 475, 477 (N.Y. App. 2003)). Others "read *Randy Knitwear* more narrowly" as "eliminating the privity requirement only for express warranty claims arising from a defendant's 'public advertising or sales literature.'" *Id*. (citing *Weisblum v. Prophase Labs, Inc.*, 88 F.Supp.3d 283, 295-296 (S.D.N.Y. 2015)).

Like the court in *Suarez*, this Court finds it "need not resolve this question, because the amended complaint plausibly alleged a breach of warranty arising from defendant[s'] public advertising—namely, the products' labeling[.]" *Id*. at *9; *see also Perez v. B. Braun Medical, Inc.,* 2018 WL 2316334 at *5 (S.D.N.Y. May 9, 2018) ("An express warranty may be formed by advertisements and privity is not required to sustain a cause of action seeking to recover damages for breach of [this] warranty."). Even under the narrower reading of *Randy Knitwear*, defendants fail to explain how this case is not one involving an express warranty formed by product labeling advertisements—that seems to be exactly what plaintiffs' claims are based upon. Accordingly, defendants' privity argument is rejected, and the breach of warranty claim survives notwithstanding a lack of direct contractual privity between the parties.

    **F. Rule 12(b)(6) – Sufficiency of Reliance Pleadings in Plaintiffs' New York General Business Law Section 350 Claim.**

Similar to their arguments against plaintiffs' common law fraud claim, defendants also argue plaintiffs fail to "plausibly plead reliance on [the Section 350] false advertisement [claims]." Once again, plaintiffs point to an apparent split in authority and argue "claims brought under GBL § 350 do not require a showing of reliance."

New York General Business Law Section 350 is succinct, stating: "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." Nothing inherent in that statutory language suggests reliance is a required element. Yet, a survey of federal opinions in New York reveals that courts do, in fact, disagree whether reliance is an implied element of a Section 350 claim. *Compare Cummings v. FCA US LLC*., 401 F.Supp.3d 288, 304-305 (N.D.N.Y. 2019) ("Reliance is, however, required for a claim under N.Y. Gen. Bus. L. § 350; in particular, reliance on the alleged statement or advertisement at the time of the purchase."); *with Hasemann v. Gerber Prods. Co*., 331 F.R.D. 239, 257 (E.D.N.Y. 2019) ("Neither section 349 nor section 350 contains a reliance requirement, and a proper claim under section 349 or 350 does not require proof that a consumer actually relied on the misrepresentation."). A survey of state law fairs no better. The intermediate appellate courts have said that a claim "under General Business Law § 350, unlike [] General Business Law § 349 [], requires proof of reliance." *Morrissey v. Nextel Partners, Inc*., 72 A.D.3d 209, 217 (N.Y. App. 2010). But, in 2012, the Court of Appeals of New York explained rather plainly that "to the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error.

Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co*., 967 N.E.2d 675, 676 (N.Y. 2012).

Ultimately, this Court is bound to follow the decision of a state's highest court when exercising diversity jurisdiction. *See EMC Ins. Co. v. Entergy Arkansas, Inc*., 924 F.3d 483, 485 (8th Cir. 2019); *Qwest Communications Co., LLC. v. Free Conferencing Corp*., 905 F.3d 1068, 1074 (8th Cir. 2018). On that basis, *Koch* will be followed as the highest expression of New York law on the issue, and any of the more recent federal opinions to the contrary are disregarded as erroneously decided.

### G. Rule 12(b)(6) – Whether a Benefit was Conferred to Defendants for Purposes of Plaintiffs' Unjust Enrichment Claim

Defendants say that plaintiffs' unjust enrichment claim must fail because "any alleged money paid … to defendants was not paid by plaintiffs." Rather, plaintiffs paid Home Depot, and Home Depot presumptively paid some amount to defendants. New York law specifically requires "a relationship or connection between the parties that is not too attenuated[.]" *Id*. (quoting *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012)). This test, however, "does not require an unjust enrichment plaintiff to plead direct dealing or an actual, substantive relationship with the defendant." *Waldman v. New Chapter, Inc*,. 714 F.Supp.2d 398, 404 (E.D.N.Y. 2010); *see also Cohen v. BMW Investments L.P*., 668 Fed.Appx. 373, 374 (2d Cir. 2016) ("[P]rivity is not required for an unjust enrichment claim"). On the sliding scale of attenuation, it has been said that "a product's indirect purchaser cannot assert an unjust enrichment claim against an entity that manufactured one of that product's *ingredients*." *Waldman,* 714 F.Supp.2d

at 403 (emphasis in original). In that scenario, the manufacturer sits between the purchaser and the component seller. "But, the indirect purchaser can assert such an unjust enrichment claim against the manufacturer of the *product* itself." *Id*. at 404 (emphasis in original). In this scenario, generally only a disinterested, intermediary retailer sits between the purchaser and the manufacturer. And even though the manufacturer and purchaser may not be aware of each other in a typical "direct" relationship, New York law imposes only more loosely that they have some measure of "dealings with each other." *Georgia Malone & Co., Inc*., 973 N.E.2d at 747 (noting that prior "awareness" language was dicta and simply one sign of a relationship between the parties). Thus, in *Tyman v. Pfizer, Inc*., for example, the district court held that purchasers of purportedly misleading ChapStick products, bought through "intermediary [] retail outfit[s]," nonetheless conferred a benefit upon the manufacturer. *See* 2017 WL 6988936 at *19-20 (S.D.N.Y. Dec. 27, 2017).

At the transactional level, this case is virtually indistinguishable from *Tyman*. And it seems rather clear under *Georgia Malone* that the parties have had, at minimum, some measure of "dealings with each other"—even if indirectly through the retail marketplace. Accordingly, on the issue of whether a benefit was conferred as between those in a sufficiently close relationship, the unjust enrichment claim will be permitted to proceed, here, as between purchasers and manufacturers with only an intermediary retailer between them.

As a last-ditch effort, defendants say the unjust enrichment claim inappropriately collides with, and is duplicative of, plaintiffs' "conventional contract [and] tort claim[s]."

14

It is true that unjust enrichment claims—born in equity—cannot displace claims at law, such as torts and contracts. *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."); *Magi XXI, Inc. v. Stato Della Cit%22a Del Vaticano*, 22 F. Supp. 3d 195, 206 (E.D.N.Y. 2014) ("[U]njust enrichment is a viable form of recovery in equity when a contractual relationship is absent"). But, nothing prevents plaintiffs from pleading their equity claims in the alternative to their other, conventional claims. To be sure, "[w]hile a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories." *HDtracks.com, LLC v. 7digital Grp. PLC*, 2019 WL 6170838 at *9 (S.D.N.Y. Nov. 19, 2019); *In Re Platinum-Beechwood Litig.*, 2019 WL 4934967 at *31 (S.D.N.Y. Oct. 7, 2019) (accord). Accordingly, the continued existence of the unjust enrichment claim will be treated, at this juncture, as made in the alternative to the other claims.

**H. Rule 12(b)(6) – State of Limitation Issues**

The final arrow in defendants' quiver is to attack the amended complaint because it "fails to place a temporal limitation on any of the claims" and, therefore, makes "claims outside [of] the relevant limitations period[.]"In plaintiffs' case, though, they purchased the offending products in the summer of 2017 and were allegedly harmed immediately thereafter. Defendants point to no statute of limitations that has run its course over the last two years, and it is not this Court's responsibility to find that statute on their behalf. If, instead, defendants' concern is animated by the possibility of class allegations

transcending limitation periods, such issues can be addressed at the class certification stage.

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that defendants United Industries Corporation and Spectrum Brand, Inc.'s motion to dismiss (#22) is **GRANTED IN PART and DENIED IN PART**.

The motion is **GRANTED** as to plaintiffs' claims for injunctive relief under Counts I and II, such claims being expressly abandoned by plaintiffs.

The motion is also **GRANTED** as to defendant Spectrum Brands, which is hereby **DISMISSED without prejudice** from this case for want of personal jurisdiction.

The motion is **DENIED** in all other respects.

So ordered this 24th day of March 2020.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE